**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DANIEL ALBERT NEWMAN,

       Petitioner,                    Civil Nos. 04-CV-74582-DT
                                            HONORABLE ARTHUR J. TARNOW
v.                                    UNITED STATES DISTRICT JUDGE

LINDA METRISH,

       Respondent,
_____/

**OPINION AND ORDER GRANTING THE**
**PETITION FOR WRIT OF HABEAS CORPUS**

     Daniel Albert Newman, ("petitioner"), presently confined by respondent, seeks

the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his habeas

application, filed both *pro se* and supplemented by counsel, petitioner challenges his

convictions for second-degree murder, M.C.L.A. 750.317; and felony-firearm, MC.L.A.

750.227b and his sentence. Because of the lack of sufficient evidence to support a

conviction, petitioner's petition for writ of habeas corpus is **GRANTED**.

## I. Background

     Petitioner was convicted of first-degree premeditated murder and felony-firearm

following a jury trial in the Livingston County Circuit Court. Petitioner has maintained his

innocence. The first-degree murder conviction was reduced to second-degree murder

by the trial court on remand from the Michigan Court of Appeals. The court imposed a

sentence of forty to eighty years.

1

The prosecution alleged that petitioner participated in the murder of Harry Chappelear within his residence on February 28, 1992. The prosecution theory was that Newman planned to rob and kill a known drug dealer, who was shot and killed during a robbery of his home.

Gary Boyd was a friend of the victim and had previously purchased marijuana from him. The victim stored marijuana in his freezer. On the date in question, Boyd went to the victim's home and noticed that the bulb from the porch light had been removed and smashed on the ground. When Boyd entered the house, he noticed that the freezer door was open and then discovered the victim's body. Boyd called the police.

Jeffrey Wise and Brent DeWolfe both testified that on the day after the homicide, they were traveling on a dirt road in Brighton Township, when they noticed and recovered a blue gym bag which contained a blue jean jacket, a Ruger handgun, a sawed-off shotgun, a ski mask-type hat, gloves, and two walkie-talkie radios. The men turned these items over to the police.

Donald Minton, a laboratory scientist for the Michigan State Police, testified that he was unable to recover any latent fingerprints from the evidence discovered in the gym bag.

Millard Holton, a firearms expert for the Michigan State Police, testified that he determined that the spent cartridges and bullet recovered from the victim's body matched the Ruger P85 9-millimeter handgun discovered in the gym bag by Mr.

DeWolfe and Mr. Wise. Holton, however, could neither identify or eliminate the shotgun that was recovered from the bag as having been used in the murder.

The prosecutor then called a series of witnesses to establish that the Ruger P85 9-millimeter pistol in question had originally been sold in an Ohio gunshop and passed through various hands to an individual named Jeffrey Wesley who in turn sold the gun to petitioner in the Fall of 1991.

Hamburg Township Police Officer Patrick DeBottis searched petitioner's home. Dog hairs were seized from a pen outside petitioner's home. Other items seized from the Defendant's residence were a hacksaw, a piece of twine, metal shavings, and a roll of duct tape. Duct tape had been wrapped on the grip of the sawed-off shotgun discovered in the gym bag. Police also recovered several 9-millimeter cartridges from petitioner's home. A container of drywall compound was removed from petitioner's girlfriend's vehicle. A sample of petitioner's hair was seized from him.

Michigan State Police Detective Robert Babbitt testified that he was unable to recover any latent fingerprints from the crime scene or from either of the weapons recovered from the gym bag. Babbitt was also unable to recover latent fingerprints from the 9 mm. casings or the shotgun shell casings that were recovered in this case.

Officer DeBottis also testified that apparent drug records with the name "Dan" on them were discovered in the victim's home.

Roger Bolhouse, a trace evidence expert with the Michigan State Police, testified as to his comparisons of evidence in this case. Bolhouse testified that the twine seized from petitioner's house was similar to the twine sample from the gym bag.

However, Bolhouse testified that he was unable to state positively that the twine recovered from petitioner's house was joined together with the twine found in the gym bag or even came from the same roll of twine. Bolhouse indicated that there was no marker thread that would lend a unique appearance to the twine. (T. V., pp. 85-87). [1] Debris inside the gym bag and on a blue jean jacket found inside of the bag chemically and visually matched the drywall compound seized from petitioner's girlfriend's vehicle. Bolhouse examined markings found on the shotgun barrel and stock which had been found inside the of the gym bag and determined that they were not inconsistent with markings that could be created by a hacksaw. However, Bolhouse indicated that he could not state that the hacksaw recovered from petitioner's house, or any hacksaw for that matter, created the markings on the shotgun. Bolhouse emphasized that it would not be possible with his current equipment or expertise to conclude that a hacksaw was used to cut the shotgun's stock or barrel. (*Id. ,* pp. 106-110). Bolhouse further determined that petitioner's size eleven footwear did not match the size 6-9 footprints discovered by the police at the murder scene or where the gym bag was recovered.

Michigan State Police Serology Technician Marie Bard-Curtis determined that no blood was found on petitioner's boots or tennis shoes. Carpet and fabric from petitioner's car did not contain blood. Bard-Curtis also determined that no blood was on the items found inside of the gym bag.

---

[1] The Court will only cite to those portions of the trial transcript which involve testimony that was either in dispute or which was ignored or misconstrued by the Michigan Court of Appeals when it affirmed petitioner's conviction.

Michigan State Police Laboratory Scientist Glen Moore testified that a dog hair recovered from petitioner's home and the hair sample removed from the petitioner were similar to the hairs discovered on the ski mask found in the gym bag. Moore, however, could not state with certainty that the hairs found on the ski mask were the same hair as petitioner's hair or the dog hair recovered from petitioner's house. The best that Moore could determine was that the hairs could have come from the same source. Moore, in fact, could not identify the species of dog that the dog hair came from. (T V, pp. 212-13, 216-17, 221, 226).

Officer Eric Calhoun was recalled to the stand and testified that the telephone number of the petitioner's mother had been discovered in the victim's personal address book.

Nancy Leat testified that she was petitioner's girlfriend who lived with him at his mother's home. Ms. Leat testified that petitioner was a drywaller by trade, that he knew the victim, and that he had been to the victim's home. Ms. Leat also recalled that the victim had made "a pass" at her in petitioner's presence. However, Leat also testified that petitioner did not react in any way, testifying further that he was not jealous or possessive. (T. VI, pp. 28-31).

Patricia Mueth testified that she was as a friend of both petitioner and Nancy Leat. Ms. Mueth recalled on one occasion observing a gun in petitioner's home which was similar in appearance to the 9- millimeter used in the homicide. Mueth also recalled that petitioner had asked her about the names of any drug dealers that he could rob for drugs or money. Mueth later clarified that

petitioner was interested in taking the dealers' money when they were away from home. (T. VI, p. 99).

At the conclusion of the prosecution's case, the trial court granted petitioner's motion for directed verdict on the first-degree murder charge, finding that there was insufficient evidence of premeditation and deliberation. Immediately after granting the motion for directed verdict, the trial court held its decision in abeyance upon the prosecution's request.

Petitioner presented an alibi defense in his behalf.

Petitioner was convicted of first-degree premeditated murder and felony-firearm. The trial court subsequently granted petitioner's motion to issue a certificate that it would vacate petitioner's first-degree murder conviction and enter an order of second-degree murder and conduct a re-sentencing. *People v. Newman,* No. 92-7032 -FC (Livingston County Circuit Court, April 10, 1997). The Michigan Court of Appeals subsequently remanded the matter to the trial court to enter a judgment on, and re-sentence petitioner for, second-degree murder. *People v. Newman,* No. 165208 (Mich.Ct.App. June 12, 1997). On remand, a judgment was entered for second-degree murder and petitioner was re-sentenced to forty to eighty years on that count.

Petitioner's conviction was affirmed on appeal after remand. *People v. Newman,* No. 165208 (Mich.Ct.App. July 2, 1999); *lv. den.* 461 Mich. 999; 611 N.W. 2d 795 (2000); *reconsideration den.,* 461 Mich. 999; 626 N.W. 2d 412 (2000).

Petitioner then filed a post-conviction motion for relief from judgment, which was denied by the trial court. *People v. Newman,* No. 92-7032 -FC (Livingston County Circuit

6

Court, August 6, 2002); *reconsideration den.* The Michigan appellate courts denied

petitioner leave to appeal. *People v. Newman,* No. 249994 (Mich.Ct.App. September 4,

2003); *reconsideration den.* No. 249994 (Mich.Ct.App. October 29, 2003); *lv. den.,* 470

Mich. 860; 679 N.W. 2d 74 (2004); *reconsideration den.,* 471 Mich. 874; 685 N.W. 2d

671 (2004); *cert. den. sub nom Newman v. Michigan,* 543 U.S. 1125 (2005).

Petitioner now seeks habeas relief on the following grounds:

I. The evidence was legally insufficient as to the two elements at issue
during trial: whether [Petitioner] was present to cause the death of Harry
Chappelear; whether Petitioner shared an acting in concert preconceived
intent to kill.

II. In opening statement the prosecutor never asserted that he could prove
[Petitioner] was present or shared the principal's preconceived intent to kill
during the murder, defense counsel was ineffective in violation of the Sixth
Amendment by not moving for directed verdict at the conclusion of the
opening statement; it would have been granted.

III. After detailed factual analysis, the court directed a verdict of acquittal
on first degree murder; at the prosecutor's request the court reconsidered
the facts to hold the decision in abeyance. Considering anew the facts
even for this purpose constitutes double jeopardy requiring reversal under
the due process clause as ultimately the jury considered a highly
prejudicial acquitted offense.

IV. The due process clause of the United States Constitution was violated
by egregious prosecutorial misconduct which included (1) bringing a
charge without probable cause; (2) misleading the court that an acquittal
could be reversed; (3) misleading the court and jury twice by claiming that
alibi witnesses recalled Newman in a bar nine days after his arrest.
Cumulative prosecutorial misconduct warrants dismissal of the charges or
tailoring the relief to cure the constitutional injury suffered by Petitioner.

V. The Court limited sentencing considerations to the guideline variables,
presentence report inaccuracies, and allocution as they were raised
verbally in court. Thus, [Petitioner] was deprived of a right to present a
defense, the effective assistance of counsel, and an appeal of right on the

merits in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

VI. The [state courts] deprived [Petitioner] of due process of law under the United States Constitution when it declined to remand the case to the trial court for an evidentiary hearing on ineffective assistance of appellate counsel before granting or denying relief.

VII. The [state courts] deprived [Petitioner] of due process of law under the United States Constitution when it declined to remand the case to the trial court so Judge Latreille could rule on the issues raised by [Petitioner] under the appropriate standards for relief contained in MCR 6.508(D).

VIII. The [state courts] deprived [Petitioner] of due process of law under the United States Constitution when it declined to remand the case to the trial court as [Petitioner] timely filed the motion for reconsideration in the trial court; the trial court must rule on the issues to accord Petitioner due process of law

## II.  Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
  (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
  (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Harpster v. State of Ohio*, 128 F. 3d 322, 326 (6th Cir. 1997).

Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a

8

question of law or if the state court decides a case differently than the Supreme Court

has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-

06 (2000). An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."

*Id.* at 409. A federal habeas court may not "issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

**A. Claim # 1. The sufficiency of evidence claim.**

Petitioner first claims that there was insufficient evidence to establish that he

participated in the victim's murder, either directly, or as an aider and abettor.

The Michigan Court of Appeals held that there was sufficient evidence to

support an inference that petitioner either committed the murder himself or aided and

abetted in its commission, based on the fact that there was evidence that one of the

murder weapons belonged to petitioner and that a witness testified she saw a

similar-looking gun at petitioner's home a week or two before the murder. The

Michigan Court of Appeals further observed that the gun was found in an abandoned

gym bag that also contained a blue jean jacket, a sawed-off shotgun with tape on it, a

ski mask, gloves, and a set of walkie-talkies. The Michigan Court of Appeals found

that the hair recovered from the ski mask matched petitioner's hair, and hair similar to

the hair of one of petitioner's dogs was also found on the ski mask. The Michigan

Court of Appeals further observed that tape similar to the tape on the shotgun was found at petitioner's home, a substance found on the blue jean jacket appeared to contain the same elements as drywall compound used by petitioner, and twine found on the gym bag was similar to twine found at petitioner's residence.  The Michigan Court of Appeals also noted that petitioner knew the victim and had been to the victim's home, that the victim had made a "pass" at petitioner's girlfriend in his presence, and that petitioner was jealous and possessive.  The Michigan Court of Appeals also relied on evidence that petitioner had "repeatedly" asked a friend for the names of any drug dealers he could rob for drugs or money.  Finally, the Michigan Court of Appeals noted that "it appeared that defendant's girlfriend may have been asking others to buttress defendant's alibi defense." *Newman,* Slip. Op. at * 2.

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this Court must determine whether the state court's application of the *Jackson* standard was reasonable. *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001).  Moreover, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson,* 443 U.S. at 324, n. 16.

Under Michigan law, the elements of second degree murder are (1) a death; (2) caused by an act of the defendant; (3) with malice, and (4) without justification or excuse. *Hill v. Hofbauer,* 195 F. Supp. 2d 871, 885 (E.D. Mich. 2001)(citing *People v. Goecke*, 457 Mich. 442, 463-64; 579 N. W. 2d 868 (1998)).

Under Michigan law, the elements of felony-firearm are that the defendant possessed a firearm during the commission of, or an attempt to commit, a felony offense. *See Payne v. Smith,* 207 F. Supp. 2d 627, 642 (E.D. Mich. 2002)(*citing People v. Avant*, 235 Mich. App. 499, 505; 597 N.W. 2d 864 (1999)).

Under Michigan law, to support a finding that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

> 1. the crime charged was committed by the defendant or some other person;
> 2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and
> 3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*Brown v. Palmer,* 441 F. 3d 347, 351 (6th Cir. 2006)(citing *People v. Carines*, 460 Mich. 750, 757-58; 597 N.W. 2d 130 (1999).
.

In order to be guilty of aiding and abetting under Michigan law, the accused must take some conscious action designed to make the criminal venture succeed. *Fuller v. Anderson,* 662 F. 2d 420, 424 (6th Cir. 1981); *cert. den.* 455 U.S. 1028 (1982). Aiding and abetting describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which might support, encourage, or incite

the commission of the crime. *People v. Turner*, 213 Mich. App. 558, 568; 540 N.W. 2d 728 (1995).

In the present case, petitioner is entitled to habeas relief, because there was insufficient evidence presented for a rational trier of fact to conclude beyond a reasonable doubt that petitioner actually killed or participated in the killing of the victim. *See Speigner v. Jago,* 603 F. 2d 1208, 1213-15 (6th Cir. 1979).  The facts relied upon by the Michigan Court of Appeals in affirming petitioner's conviction may have supported a "reasonable speculation" that petitioner participated in the murder, but these facts do not amount to proof beyond a reasonable doubt.  Mere suspicion cannot sustain a verdict of guilt beyond a reasonable doubt. *See United States v. Jenkins,* 345 F. 3d 928, 942 (6th Cir. 2003); *see also United States v. Hayter Oil Co., Inc. of Greeneville, Tennessee,* 51 F. 3d 1265, 1271, n. 5 (6th Cir. 1995)(*quoting United States v. Van Hee*, 531 F. 2d 352, 357 (6th Cir. 1976))(holding that " '[e]vidence that at most establishes no more than a choice of reasonable probabilities cannot be said to be sufficiently substantial to sustain a criminal conviction upon appeal.'").

In *Fuller v. Anderson, supra,* the Sixth Circuit held that in a prosecution for felony-murder, the evidence established, at most, that the petitioner was present when another individual firebombed the house.  That was held to be insufficient to establish beyond a reasonable doubt that petitioner took conscious action to aid in the commission of the underlying arson. *Id.* at 424.  The evidence in *Fuller* was the petitioner had looked around while another person started the fires that caused the victim's death.  The Sixth Circuit agreed with the district court that although it may have

been reasonable to speculate from this evidence that petitioner acted as a lookout, a rational jury could not find it to be proof beyond a reasonable doubt that the petitioner aided and abetted in the offense, where there was no evidence that the petitioner intended to burn the victims' home and the evidence that he knew that this other individual planned to burn it was "simply too meager" to support his conviction. *Id.* at 424.

Likewise, in *Hopson v. Foltz,* 818 F. 2d 866 (Table); 1987 WL 37432, * 2 (6th Cir. May 20, 1987), the Sixth Circuit granted a writ of habeas corpus, finding that there was insufficient evidence for a jury to find beyond a reasonable doubt that the petitioner participated as an aider and abettor in the murder for which he was convicted. The testimony at most indicated that the petitioner in *Hopson* was present at the shooting, that he may have argued with the victim during the evening prior to the shooting, that he may have known that someone else intended to harm the victim, and that he may have taken the empty shell casings after the shooting. However, there was no proof that the petitioner "acted in pre-concert" with the shooter to commit the murder or that he said or did anything to "support, encourage, or incite the commission of the crime." *Id.*

In *Brown v. Palmer, supra,* the Sixth Circuit indicated that although *Fuller* and *Hopson* were pre-AEDPA [Antiterrorism and Effective Death Penalty Act] cases, "[t]heir holdings that distinguish reasonable speculation from sufficient evidence are still persuasive in establishing that the state court's application of federal constitutional law as set forth in *Jackson*, was objectively unreasonable." *Brown,* 441 F. 3d at 352.

13

In the present case, without impermissibly stacking inferences, there is insufficient evidence for a rational trier of fact to conclude that petitioner participated in the victim's murder. *See Kelly v. Roberts,* 998 F. 2d 802, 808-09 (10th Cir. 1993). "[A]lthough a jury may infer facts from other facts that are established by inference, each link in the chain of inferences must be sufficiently strong to avoid a lapse into speculation." *Piaskowski v. Bett,* 256 F. 3d 687, 693 (7th Cir. 2001)(granting habeas relief where there was insufficient evidence that the petitioner participated in first-degree murder for which he was convicted). In this case, the chain of inferences that the prosecution attempted to forge fails in many places. *Id.*

The main evidence against petitioner was the fact that his Ruger 9 mm. handgun was apparently used as one of the murder weapons. However, no witnesses observed petitioner in possession of this firearm just before or after the murder. Petitioner's fingerprints were not recovered from this weapon or the 9 mm. casings recovered in this case either.

The importance of the contents of the gym bag discovered by Wise and DeWolfe some thirty two hours after the murder is also questionable. The twelve gauge shotgun found inside the bag could not be conclusively linked to the shooting. None of the items in the gym bag contained petitioner's fingerprints. The Michigan Court of Appeals overemphasized the strength of some of the evidence recovered from the gym bag. Contrary to their finding, there was never a positive match between the human hair found in the gym bag and the human hair taken from petitioner. Further, the dog hair recovered from the gym bag and the dog hair recovered from petitioner's

14

house could not be conclusively matched.  In fact, the witness could not even tell what breed of dog was the source of the hair.  The witness testified that the best he could determine was that these hairs were similar, but he could not state with certainty that the hairs were the same.  He could only state that the twine found in the gym bag was similar to twine recovered at petitioner's house, but he, too, was unable to conclude that the twine was the same.  There was nothing unique about the twine.  He was also unable to determine whether the hacksaw found at petitioner's house had been used to cut the shotgun found in this gym bag as well.

The Michigan Court of Appeals also placed great importance on the fact that the victim had made a "pass" at petitioner's girlfriend and that petitioner was jealous and possessive.  However, the Michigan Court of Appeals completely ignored Nancy Leat's testimony that petitioner was not possessive and jealous and that he had no reaction whatsoever when the victim made this "pass" at her.

The Michigan Court of Appeals also stressed the fact that petitioner had asked a friend, presumably Mueth, for the names of drug dealers whom he could rob.  The Michigan Court of Appeals, however, ignored Mueth's testimony that  petitioner was interested in taking the dealers' money when they were away from home, thus, undercutting the prosecutor's theory that petitioner had intended on robbing and killing the victim.

Lastly, the Michigan Court of Appeals mentioned that petitioner's girlfriend "may have" asked others to buttress petitioner's alibi defense.  Proof of fabrication of an alibi may be some affirmative evidence of guilt but standing alone would be insufficient to

support a conviction. *See United States v. Ford,* 237 F. 2d 57, 63, n. 10 (2nd Cir. 1956);

*vacated as moot,* 355 U.S. 38 (1957).  In this case, there was no evidence presented

that petitioner himself asked witnesses to fabricate an alibi defense for him.  Any

evidence that his girlfriend "may have" asked witnesses to buttress petitoiner's alibi is

simply too tenuous to support an inference that petitioner participated in this murder.

In this case, the "meager circumstantial evidence" is simply too weak to convict

petitioner of these crimes, particularly since much of it is "conjecture camouflaged as

evidence." *Piaskowski,* 256 F. 3d at 693.  The evidence is insufficient to support

petitioner's conviction for second-degree murder and felony-firearm, because none of

the evidence put petitioner at the scene of the murder. *See Cooper v. McGrath,* 314 F.

Supp. 2d 967, 996-97 (N.D. Cal. 2004).  In addition to the fact that there were no

eyewitnesses to this crime, there were no fingerprints recovered from the crime scene

or from the gym bag that would link petitioner to the murder.  None of the victim's blood

was ever recovered from petitioner's boots, shoes, his automobile, or the gym bag.

The Michigan Court of Appeals also ignored the fact that petitioner's size 11

footwear did not match the size 6-9 footprints found at the crime scene or where the

gym bag was discovered.  No motive was conclusively established.  There was no

evidence that petitioner ever made any threats to kill the victim.  While the evidence

may have lead to speculation that petitioner committed this murder, there is insufficient

evidence to prove beyond a reasonable doubt that petitioner committed this murder. [2]

---

[2]  Indeed, as petitioner's counsel points out, the prosecutor acknowledged
at the conclusion of the preliminary examination that "certainly... the possibility

The Michigan Court of Appeals' conclusion that the evidence was sufficient to convict petitioner is contrary to, or an unreasonable application of, *Jackson v. Virginia.* Petitioner is therefore entitled to habeas relief. Because this Court finds that the state has failed to meet its burden of proof, the appropriate remedy is to issue a writ of habeas corpus outright, rather than conditioning the grant of the writ on the state's failure to retry the petitioner. *See Brown v. Palmer,* 358 F. Supp. 2d 648, 656 (E.D. Mich. 2005).

The petition for writ of habeas corpus is hereby granted with respect to petitioner's insufficiency of evidence claim and the Court orders that petitioner's convictions for second-degree murder and felony-firearm be vacated. Because the Court is granting petitioner a writ of habeas corpus on his first claim, the Court will only briefly address petitioner's remaining claims. *See Brown,* 358 F. Supp. 2d at 656.

---

exists that somebody else may have been involved in this...homicide rather than the defendant. Certainly." (Prelim. II, pp. 9-10). The prosecutor also conceded in closing argument that petitioner may not have been responsible for the shooting, stating,

> "There is evidence in this case that there was more than one person involved in this. There is evidence that there were walkie-talkies....You could find, based on this evidence, that one person shot... Harry Chappalear....You could conclude, I suppose, on this evidence that there were two people who went in. [T. VIII(b), pp. 53-54).

As petitioner's counsel aptly notes, "The prosecution's own uncertainty illustrates just how questionable the evidence in this case was." *See* Petitioner's Supplemental Brief in Support of Petition For Writ of Habeas Corpus, p. 14, n. 4.

**B. Claim # 2. The ineffective assistance of counsel claim.**

Petitioner next claims that defense counsel was ineffective for failing to move for a directed verdict at the conclusion of the prosecutor's opening statement, because the prosecutor failed to refer to evidence in his opening statement that would establish petitioner's involvement in the murder.

The Michigan Court of Appeals rejected petitioner's claim on several grounds. First, a motion for directed verdict may not be brought until the prosecution has completed its case-in-chief. *Newman,* Slip. Op. at * 3 (citing M.C.R. 6.419). Secondly, the Michigan Court of Appeals concluded that the prosecution's opening remarks adequately explained the general nature of the case and the ultimate facts that it proposed to present that were essential to proving petitioner's intent and involvement in the murder. *Id.*

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* Second, the defendant must show that such performance prejudiced his defense. *Id.*

As an initial matter, it is unclear whether a defendant in Michigan can seek a motion for a directed verdict based upon a prosecutor's deficient opening statements.

M.C.R. 6.419 states that: "[A]fter the prosecutor has rested the prosecution's case-in-chief and before the defendant presents proofs", a trial court may direct a verdict of acquittal if the evidence is insufficient as a matter of law.  However, the Michigan Court of Appeals has held that a trial court in a bench trial could properly dismiss criminal charges before hearing any evidence if the prosecutor admits in his opening statement that the evidence would be insufficient to prove the defendant's guilt beyond a reasonable doubt. *See Matter of Ferguson,* 78 Mich. App. 576, 578-79; 261 N.W. 2d 8 (1977).  The Michigan Court of Appeals did admonish trial courts that:

> "[t]he practice of immediate dismissal after opening argument should be used sparingly and only after careful judicial consideration." *Id.* at p. 579.

> The Michigan Court of Appeals further stated that it:
> "would discourage the use of such dismissals where a jury has been called.  In criminal cases, the province and powers of the jury as the conscience of the community should rarely, if ever, be usurped by the trial court."

> *Id.* at 579-80.

Even assuming that a defendant in Michigan could move for a directed verdict at the conclusion of the prosecutor's opening statements, petitioner has failed to show that his counsel was ineffective for failing to do so.  In light of the Michigan Court of Appeals' admonitions in *Ferguson,* it is doubtful that the trial court would have granted a directed verdict in this case prior to hearing any evidence.  Secondly, trial counsel did move for a directed verdict at the conclusion of the prosecution's case, which was granted in part.  Petitioner has failed to show how he was prejudiced by counsel's failure to move for a directed verdict at the conclusion of the prosecutor's opening

statements rather than at the conclusion of the case-in-chief.  In any event, petitioner's

second claim is academic in light of the fact that this Court is granting habeas relief on

his sufficiency of evidence claim.

**C.  Claim # 3.  The Double Jeopardy Clause Claim.**

In his third claim, petitioner contends that the trial court violated the Double

Jeopardy Clause by reconsidering its decision to direct a verdict on the first-degree

murder charge.  The Michigan Court of Appeals rejected petitioner's claim, because

the first-degree murder conviction was vacated on remand and petitioner was

convicted and sentenced on the lesser included offense of second-degree murder.

*Newman,* Slip. Op. at * 3.  The Michigan Court of Appeals further concluded that

petitioner was not prejudiced by the erroneous submission of the first-degree murder

charge to the jury, because the primary issue in the trial was whether petitioner

participated in the murder. *Id.*

When a jeopardy-barred conviction is reduced to a conviction for a lesser

included offense which is not jeopardy barred, the burden shifts to the defendant to

demonstrate a reasonable probability that he would not have been convicted of the

non-jeopardy-barred offense absent the presence of the jeopardy-barred offense. *See*

*Morris v. Mathews,* 475 U.S. 237, 246-47 (1986).

In the present case, petitioner has failed to show a reasonable probability that

he would not have been convicted of second-degree murder absent the submission of

the first-degree premeditated murder charge to the jurors.  The main issue in

petitioner's trial was whether petitioner was involved in the murder of the victim, either

as the principal or as an accessory, not whether the shooting was premeditated or unpremeditated. Because petitioner has failed to show that he was prejudiced by the wrongful submission of the first-degree murder conviction to the jury, the reduction of petitioner's first-degree murder conviction to second-degree murder was an adequate remedy for the Double Jeopardy violation. *Morris,* 475 U.S. at 245-48. In addition, the Double Jeopardy Clause violation has been mooted by virtue of this Court's granting of habeas relief on petitioner's first claim.

### D. Claim # 4.  The prosecutorial misconduct claims.

Petitioner next claims that the prosecutor committed misconduct by bringing charges against petitioner without probable cause, by misleading the trial court into believing that a directed verdict of acquittal could be reversed, and by making false statements about petitioner's alibi defense.

Petitioner's primary claim is that the prosecutor brought criminal charges against petitioner when there was no evidence to establish that petitioner participated in the victim's murder. This Court agrees with petitioner that there was insufficient evidence to charge, or to convict, petitioner. Because this prosecutorial misconduct claim is substantially identical to the sufficiency of evidence claim for which this Court is granting relief, this portion of petitioner's prosecutorial misconduct claim is moot. *See e.g. Schledwitz v. United States*, 169 F. 3d 1003, 1017, n. 8 (6th Cir. 1999). In addition, because petitioner's second prosecutorial misconduct claim is essentially identical to petitioner's Double Jeopardy claim, the Court rejects this claim for the same reason that it rejected petitioner's third claim.

21

Petitioner's remaining prosecutorial misconduct claim is that the prosecutor mischaracterized petitioner's alibi defense in his closing argument, by misleading jurors into thinking that alibi witnesses recalled petitioner being with them in a bar nine days after his arrest.

The actions of a prosecutor in misrepresenting facts in evidence can amount to substantial error, because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer*, 228 F. 3d 689, 700 (6th Cir. 2000)(*quoting Donnelly v. DeChristoforo,* 416 U.S. 637, 646 (1974)).  In addition, asserting facts that were never admitted into evidence may mislead a jury in a prejudicial way. *Id.*  However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Byrd v. Collins*, 209 F. 3d 486, 535 (6th Cir. 2000).

In the present case, there was some evidence that petitioner's alibi witness, Jeannie McCormick, may have been confused or mistaken about the date that she went north to visit her mother.  McCormick had testified at the preliminary examination that petitioner was at the bar where she worked on the night of the murder, because she went to visit her mother the next day, February 28, 1992.  However, at trial, McCormick believed that she may have visited her mother, Violet Jeffries, prior to February 28, 1992.  Jeffries testified that McCormick visited her at the end of January of 1992 and again visited her on March 28th.

The prosecutor's comments were not improper, because they were a fair comment upon McCormick's confusion about when she went to visit her mother. Petitioner is therefore not entitled to habeas relief on this claim.

**E.  Claim # 5.  The sentencing claim.**

Petitioner next claims that he was deprived of the right to a fair sentencing, the right to present a defense, the right to the effective assistance of counsel, and the right to a meaningful appeal of right when the trial court refused to consider any mitigating evidence offered on petitioner's behalf at the re-sentencing after the original first-degree murder conviction was vacated.

Prior to the-sentencing, petitioner's counsel had filed a sentencing memorandum, which raised a number of arguments in support of mitigating petitioner's sentence.  However, they addressed the sufficiency of the evidence, rather than sentencing factors.

None of these defenses or issues were ever addressed by the trial court at re-sentencing.  The trial court merely stated:

> "[y]ou have put it in writing matters that I believe you intend to address... in the [Michigan] Court of Appeals.  There are many things in your documentation here.  I would says it's certainly 50 pages if not several hundred pages of documentation in all that you have submitted here, and that will go...before the [Michigan] Court of Appeals..."(Resentencing T., pp. 22-23).

The trial court went on to state:

> "I'm trying to focus now on the sentencing in this matter which is what you're here for today. (*Id.* at p. 23).

The trial court limited sentencing objections to the Sentencing Guidelines and pre-sentence report inaccuracies as "they were raised orally to this Court here." (*Id.* at p. 24).  Defense counsel objected to the trial court not specifically addressing the sentencing defenses and issues, but the trial court replied "I don't know that I am

23

required to make findings of fact as part of... a sentencing memorandum." (*Id.* at pp.

25-26). These issues were related to the sufficiency of evidence. Petitioner was

offered a chance of allocution. Therefore, the trial court was correct that petitioner had

"a fundamental misunderstanding as to what [sentencing] mitigation entails." (*Id.* at p.

52). Petitioner is not entitled to habeas relief on this claim.

**F. Claims # 6, 7, and 8. The post-conviction claims.**

Petitioner lastly alleges various defects in how his post-conviction motion was

handled by the state trial and appellate courts. A federal habeas corpus petition

cannot be used to mount a challenge to a state's scheme of post-conviction relief.

*Greer v. Mitchell,* 264 F. 3d 663, 681 (6th Cir. 2001). States have no constitutional

obligation to provide post-conviction remedies. *Id.* Any error in the application of

Michigan's post-conviction statute is an error of state law that would not be cognizable

in federal habeas review. *See Simpson v. Jones,* 238 F. 3d 399, 406-407 (6th Cir.

2000).

## IV.  <u>ORDER</u>

IT IS HEREBY ORDERED THAT PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS IS UNCONDITIONALLY GRANTED.  PETITIONER'S CONVICTIONS FOR SECOND-DEGREE MURDER AND FELONY-FIREARM ARE ORDERED TO BE VACATED AND SET ASIDE.  RESPONDENT IS ORDERED TO RELEASE PETITIONER FROM CUSTODY.

s/Arthur J. Tarnow_____
Arthur J. Tarnow
United States District Judge

Dated:  June 15, 2007

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on June 15, 2007, by electronic and/or ordinary mail.

s/Catherine A. Pickles_____
Judicial Secretary